AO 72A
(Rev.8/82)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JERMAINE GIBSON, | : | MOTION TO VACATE |
| Federal Reg. No. 97138-020, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL NO. |
|     v. | : | 1:13-CR-440-TWT-JSA |
| | : | |
| UNITED STATES OF | : | CIVIL ACTION NO. |
| AMERICA, | : | 1:17-CV-566-TWT-JSA |
|     Respondent. | : | |

## <u>MAGISTRATE JUDGE'S FINAL ORDER AND REPORT AND RECOMMENDATION</u>

Movant Jermaine Gibson has filed the instant motion to vacate pursuant to

28 U.S.C. § 2255. (Doc. 87). Movant seeks to challenge the constitutionality of

his sentences, which were imposed on July 29, 2014, following a jury trial in the

Northern District of Georgia.

I.    <u>Factual And Procedural History</u>

    A.    <u>Procedural History</u>

On November 6, 2013, Movant was indicted by a federal grand jury in the

Northern District of Georgia and was charged with felon in possession of a

firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 1). Following

a jury trial from June 5, 2014 through June 7, 2014, Movant was convicted of the

charge against him.  (Docs. 42, 43, 44).  Thereafter, on July 29, 2014, Chief U.S. District Judge Thomas W. Thrash, Jr. sentenced Movant to a total of 72 months of imprisonment to be followed by three years of supervised release.  (Docs. 60, 61, 62).

Movant's counsel filed a notice of appeal on August 12, 2014, and raised the following enumerations of error: (1) the district court clearly erred when it rejected Movant's *Batson* challenge to the Government's strikes of five African-American venire members; (2) the Government improperly vouched for its witnesses – *i.e.,* the officers who testified about Movant's statements concerning his possession of the handgun – during closing arguments; (3) the district court erred in instructing the jury on constructive possession; and (4) Movant's sentence was substantively unreasonable and was imposed in violation of Movant's First Amendment rights.  (Doc. 84); *United States v. Gibson*, 633 F. App'x 713 (11th Cir. 2015).  On November 19, 2015, the Eleventh Circuit affirmed Movant's conviction and sentence. (Doc. 84); *Gibson*, 633 F. App'x 713.  Movant did not file a petition for a writ of certiorari with the United States Supreme Court.

AO 72A
(Rev.8/82)

Movant filed the instant *pro se* § 2255 motion in this Court on February 10, 2017, and raises the following grounds for relief:[1]

(1)     Movant is actually innocent of violating 18 U.S.C. § 922(g)(1);

(2)     the Government engaged in prosecutorial misconduct by:

    (a)     soliciting incriminating statements in violation of *Miranda*;

    (b)     utilizing the media to discredit Movant in violation of Movant's due process rights; and

    (c)     failing to turn over exculpatory evidence in the form of audio/video recordings of the interrogations;

(3)     counsel was constitutionally ineffective by failing to:

    (a)     present alibi witnesses;

    (b)     present an expert witness to explain what "under duress" meant on the interrogation waiver form;

    (c)     appeal the introduction of the federal agent witness's testimony regarding Movant's statements based on conflicting testimony and no audio recordings available to impeach; and

    (d)     argue to the jury that there was no scientific evidence connecting any federal nexus to the firearm in question;

---

[1] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed). *See Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008); *Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

AO 72A
(Rev.8/82)

(4)     the indictment was defective; and

(5)     the district court erred in failing to suppress Movant's statements to
        the federal agents.

(Doc. 87).

B.     <u>Factual History</u>

The Eleventh Circuit summarized the evidence presented at trial as follows:

The firearm Gibson was convicted of possessing was discovered in
a home that he was unlawfully occupying in Lithonia, Georgia. A
woman purchased that home from a bank in January 2013, with the
closing date set for April 26, 2013. Gibson, along with several other
people, unlawfully moved into the home during that time period. The
purchaser and the bank's listing agent tried to get Gibson to leave.
He refused. When the police visited it to investigate his occupancy,
he told them that he owned the home. He claimed ownership based
on a number of documents that he posted on the front door and
windows of the home. [FN1: Those documents consisted of a
"dispossessory warrant," an "affidavit of awareness," a "realtor and
state agent notice," two quitclaim deeds, a "notification of reservation
of rights UCC 1-308/1-207," and an "affidavit of truth."]. The gist
of those documents was that Gibson owned the home and that he was
a "sovereign citizen" not subject to the jurisdiction of the United
States or any state. [FN2: For example, the "affidavit of truth"
provided that Gibson was "not a 'person' when such term is defined
in statutes of the United States or statutes of the several states when
such definition includes artificial entities." It also stated that Gibson
"voluntarily [chose] to comply with the man-made laws which serve
to bring harmony to society, but no such laws, nor their enforcers,
have any authority over [him]."].

4

Gibson continued to occupy the home through the closing date. The purchaser and the bank then went to court in DeKalb County, Georgia to settle the ownership dispute. Gibson attended those proceedings. The court ordered him to leave the home immediately. At the end of those proceedings, law enforcement officers arrested Gibson for various state law charges related to his occupation of the home. That same day the officers searched the home. They found fraudulent identification documents with Gibson's name on them and a Smith & Wesson revolver under the bedsheets in the master bedroom.

The officers also interviewed Gibson twice on the day of his arrest. During those interviews, Gibson insisted that he owned the home, citing some of the documents that he had posted on the windows and door. He stated that he slept in the master bedroom most of the time and pointed to the location of that bedroom on a schematic drawing of the home.

The officers also asked him whether there were any firearms in the home. Gibson replied that another occupant had a shotgun. When asked about the handgun (which the officers did not describe in detail) that had been found during the search, Gibson described it as a five-shot, black-handled revolver and stated that he had moved it around the home. His description of the handgun matched the revolver the officers found in the master bedroom.

The government charged Gibson with one count of being a convicted felon who knowingly possessed a firearm (the handgun) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He agreed to stipulate at trial that he was a convicted felon at the time of the indictment. [FN3: Gibson had prior felony convictions for burglary and first degree forgery.]. However, he continued to assert his sovereign citizen status. On the first day of trial, he filed *pro se* an "affidavit of incompetency," which alleged (among other things) that the court was a "tribunal operated as a private corporation" instead of a real court. At the end of trial Gibson stated that the district court lacked

5

jurisdiction over him because he was a sovereign citizen. The jury found Gibson guilty of being a felon in possession of a firearm, and the district court sentenced him to 72 months imprisonment. This is his appeal.

(Doc. 84 at 2-4); *Gibson*, 633 F. App'x at 715.[2]

II.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal

---

[2] For further explanation, the Eleventh Circuit has described sovereign citizenship theory this way: "so-called 'sovereign citizens' are individuals who believe they are not subject to the courts' jurisdiction and often deny being named defendants in actions to which they are parties, instead referring to themselves as third-party intervenors." *United States v. Davis*, 586 F. App'x 534, 536 (11th Cir. 2014).

AO 72A
(Rev.8/82)

quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

AO 72A
(Rev.8/82)

III.   Analysis

    A.   Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel In Connection With Grounds 3(a), 3(b), 3(c), and 3(d).

      1.   Ineffective Assistance Of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697

("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The *Strickland* standard also applies to claims of ineffective assistance of counsel on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Brooks v. Commissioner, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). To succeed on a claim of ineffective assistance of appellate counsel, as on a claim of ineffective assistance of trial counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A petitioner does not have a right to have every possible argument raised on appeal, and it is up to appellate counsel to "'winnow[] out' weaker arguments[.]" *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014). Finally, appellate counsel is not ineffective for failing to raise a frivolous argument on appeal. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

AO 72A
(Rev.8/82)

## 2.    Grounds 3(a) and 3(b)

In Ground 3(a), Movant claims that counsel was ineffective because he failed to present alibi witnesses who allegedly would testify that Movant was not at the residence on the day of his arrest or on the days leading up to his arrest. (Doc. 87 at 6).  However, trial counsel's decisions with regard to whether to call witnesses, including an alibi witness, is "quintessential trial strategy."  *Ball v. United States*, 271 F. App'x 880, 884 (11th Cir. 2008).  *See also Goff v. United States*, __ F. App'x __, 2017 WL 2982973, at *1 (11th Cir. July 13, 2017) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective.").  Moreover, the Government based its case on Movant's constructive possession of the gun [*see, e.g.,* Doc. 73 at 58] – by virtue of the overwhelming evidence of Movant's exercise of complete control and dominion of the residence where the gun was found – and any evidence that Movant was not physically present at the residence on the days preceding or the day of the search yielding the gun was not relevant to whether Movant did, in fact, exercise and control the residence so as to constructively possess the gun.  Thus, Movant has failed to demonstrate that counsel's decision not to present alibi testimony was anything

10

other than a reasonable strategic decision, or that there is a reasonable probability that any such alibi testimony would have changed the jury's decision that Movant constructively possessed the gun by exercising complete control and dominion over the residence.[3]

Nor can Movant demonstrate that counsel was ineffective by failing to present an expert witness to explain how Movant was "under duress" when he signed the *Miranda* forms. Indeed, during both the hearing on Movant's motion to suppress the statements he made to the federal agents after signing those forms and during the jury trial, two witnesses testified that Movant himself explained that when he signed "under duress" he meant that he was a sovereign citizen, did not

---

[3] Conveniently, Movant now claims that because he did not have lawful access to the residence he could not have constructively possessed the gun located therein. (Doc. 87, Attach. 1 at 15). Despite Movant's claim that the Government's evidence of his unlawful attempts to obtain the property was "an abundance of rhetoric" [Doc. 93 at 2], the Government's evidence demonstrated that despite the fact that Movant had never purchased the property he falsely claimed it as his own and moved in, more than once changing the locks and refusing to leave when confronted by the true owners and the police. Such evidence – including his admission to the agents that he slept in the master bedroom where the gun was found and that his admission that he kept the gun to protect "his" house against burglary – clearly demonstrated, and the jury obviously found, that Movant exercised dominion and control of that residence so as to constructively possess the gun, regardless of the fact that the true owners eventually succeeded in removing him from the house.

recognize the laws of the United States, and believed that the laws did not apply to him. (Doc. 72, Attach. 2 at 31- 65, 74-75, 136). Similar to Ground 3(a), therefore, Movant cannot demonstrate either that counsel's strategy for not presenting an expert witness to explain how Movant was "under duress" was unreasonable, or that there is a reasonable probability that but for counsel's failure to present such expert testimony the result would have been different. Accordingly, Movant is not entitled to relief in connection with Grounds 3(a) or 3(b).

      3.    <u>Ground 3(c)</u>

In Ground 3(c), Movant claims that counsel should have appealed the introduction of the federal agents' testimony as to Movant's statements – *i.e.,* the denial of his motion to suppress those statements. Movant, however, cannot demonstrate that counsel was ineffective for failing to raise this issue on appeal or that he was prejudiced thereby.

When denying Movant's motion to suppress, Judge Thrash made the following findings:

> I find that with respect to both interviews that the Defendant freely and voluntarily waived his rights, that he was properly advised of his Miranda rights and that there was no coercion, no intimidation, no

12

promises, no threats. And the mere fact that Mr. Gibson writes on the paper "under duress" is inconsistent with his statement that he was willing to waive his rights, inconsistent with his conduct that he freely and voluntarily talked with the agents during both interviews; and merely writing on that waiver form does not negate the fact that he did waive his rights and agreed to talk voluntarily with the agents. I think I have already said it that he was fully advised of his Miranda rights on both occasions, that he knowingly, voluntarily waived those rights and agreed to talk with the agents.

(Doc. 72, Attach. 2 at 67). Judge Thrash's decision was consistent with the law in this Circuit.

Indeed, "[t]he Constitution does not prohibit every element which influences a criminal suspect to make incriminating admissions." *United States v. Washington*, 431 U.S. 181, 187 (1977). Rather, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). "[U]nless the record reveals some compulsion, [the defendant's] incriminating testimony cannot conflict with any constitutional guarantees of the privilege." *Washington*, 431 U.S. at 181. And "the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience,

13

and conduct of the accused.'" *North Carolina v. Butler*, 441 U.S. 369, 375 (1979) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) ("In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation.").

Moreover, "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010). To find a waiver involuntary, "coercive police activity is a necessary predicate." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Finally, the Government only needs to establish voluntariness by a preponderance of the evidence.

Here, during the motion to suppress hearing, FBI Special Agent Montes testified that: Movant was interviewed twice on the day of his arrest; prior to each interview Movant was advised of his *Miranda* rights by an agent who read them from a form; after each reading of the rights Movant verbally indicated that he understood his rights, that he would waive his rights, and that he would consent to

14

the interview, after which he signed the form indicating that he did, in fact, waive his rights, but then he wrote "Under Duress" and "UCC-1-207/1-308" across his name because, in Agent Montes' experience with those persons who claim to be sovereign citizens, Movant believed that the laws do not apply to him so that Movant could later say that he was not bound by his cooperation. (Doc. 72, Attach. 2 at 27-35). And despite writing "under duress" by his signature, during both interviews Movant was calm, relaxed and cooperative, no one threatened or forced him to sign the waiver form or promised him anything in exchange therefore, and Movant agreed to, and did, answer questions. (*Id.* at 36, 38-41).

FBI Agent Taylor, who also was present during both interviews of Movant, corroborated Special Agent Montes' testimony that during both interviews Movant was read his rights, was asked to, and did, initial next to each of those rights if he decided to waive them and sign at the bottom; Movant verbally responded that he understood his rights and that he would waive those rights and answer questions; and that Movant was not threatened, coerced, or forced to sign the form either time. (*Id.* at 54-55, 58-60). Similar to Special Agent Montes, Agent Taylor also testified that when Movant was asked why he wrote "under duress" on the form, Movant stated that he was a sovereign citizen who did not recognize the laws of

15

the United States; however, despite writing that statement Movant still consented to be interviewed and was cooperative. (*Id.* at 55-57).

Based on this testimony, Movant cannot demonstrate that Judge Thrash's decision that Movant knowingly and voluntarily talked with the agents on both occasions after being read his *Miranda* rights would have been overturned on appeal. Indeed, the mere fact that Movant wrote "under duress" on the waiver form was inconsistent with his words and actions by which he did, in fact, voluntarily provide statements to the agents during both interviews, and the totality of the circumstances support Judge Thrash's findings.

Movant does not raise any new arguments here; instead, he continues to claim that "[s]tating that I was UNDER DURESS as written on the FD-395 withdrew and removed any and all consent on the document." (Doc. 87, Attach. 1 at 18). Movant cannot have it both ways. Indeed, Movant's argument that his statements could not have been voluntary based on his "particular susceptibilities" [*i.e.,* his belief as a sovereign citizen that by simply writing "under duress" on the waiver form he could both "(1) accept the document and (2) deny its effect upon 'them' by adding the words 'under duress'" (Doc. 93 at 9-10)] cannot change the fact that those words were entirely inconsistent with his demeanor and actions

which showed the opposite. The Government certainly has met its burden of demonstrating by a preponderance of the evidence that Movant's statements were, in fact, voluntary.

And, as discussed previously herein, the fact that Movant considers himself a "sovereign citizen" makes no difference to this decision, as according to most courts – including the Eleventh Circuit – sovereign citizenship theory "should be rejected summarily, however they are presented." *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011). *See also Linge v. State of Georgia, Inc.*, 569 F. App'x 895, 896 (11th Cir. 2014) ("[T]o the extent that [the plaintiff] more broadly argues that he is a sovereign citizen and not subject to . . . Georgia laws, both we and the district court lack jurisdiction because it is 'wholly insubstantial and frivolous.'") (citations omitted); *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013) (describing "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (describing "sovereign citizen" ideology as "completely without merit" and "patently frivolous"); *United States v. Davis*, No. 1:13-CR-0058-CAP, 2015 WL 12551076, at *1 (N.D. Ga. July 1, 2015) ("The ...

17

legal theories of 'sovereign citizens' are not established law in this court or anywhere in this country's valid legal system.") (Pannell, J.).

Counsel cannot be ineffective for failing to raise a meritless claim. *See Capshaw v. United States*, 618 F. App'x 618, 622 (11th Cir. 2015) (finding counsel was not ineffective for failing to raise a meritless claim); *Harrison v. United States*, 577 F. App'x 911, 915 (11th Cir. 2014) ("In short, the failure of Harrison's appellate counsel to raise these meritless issues on appeal cannot have constituted ineffective assistance."). Movant has not demonstrated that counsel's failure to raise this meritless issue on appeal constituted ineffective assistance; nor has he demonstrated that the outcome of his appeal would have been different had counsel done so. Accordingly, Movant is not entitled to relief in connection with Ground 3(c). *See, e.g., United States v. Garcia*, No. 15-CR-260 (PAM/TNL), 2016 WL 9131460, at *5-7 (D. Minn. May 9, 2016) (rejecting sovereign citizen's claim that his statement was involuntary because, even though he told the detective that he would answer questions "for this purpose" and that he was willing to talk to her but did not want his rights waived when he went to court or for his statement used against him later, his actions were inconsistent with the exercise of his right to remain silent where he then proceeded to answer the detective's questions without

18

any coercion or pressure in a relaxed and cooperative conversation and thus, based on the totality of the circumstances, his statements were voluntarily made).

    4.    <u>Ground 3(d).</u>

Lastly, in Ground 3(d) Movant argues that counsel was ineffective for failing to argue to the jury that there was no scientific evidence to provide a federal nexus to the firearm in question. In the context of the offense of being a felon in possession of a firearm, 18 U.S.C. § 922(g) sets forth the federal nexus, in that it makes unlawful the possession by a convicted felon of a firearm "which has been shipped or transported in interstate or foreign commerce." There is no requirement that the Government prove with scientific evidence that the firearm has been shipped or transported in interstate commerce, and Movant does not cite to any case law that would support this proposition. Instead, it is sufficient for the Government to prove that the firearm was manufactured in a different state than where the defendant possessed it. *See, e.g., United States v. Carlisle*, 173 F. App'x 796, 798-99 (11th Cir. 2006) ("As long as the weapon in question has a 'minimal nexus' to interstate commerce, a charge under § 922(g)(1) is constitutional. . . . The government only has to demonstrate that the possessed firearm traveled in

interstate commerce in order to establish that minimal nexus to interstate commerce.") (citations omitted).

Here, Michael Roland, an agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") with an expertise in identifying an interstate nexus in connection with firearms, testified that the Smith & Wesson firearm that Movant was charged with possessing in Georgia was manufactured in Massachusetts. (Doc. 72, Attach. 2 at 111-117). That expert testimony was sufficient to demonstrate the minimal nexus to interstate commerce. *See United States v. Simplice*, __ F. App'x __, 2017 WL 1735240, at *2 (11th Cir. May 3, 2017) ("The government can establish the interstate commerce element by showing that the defendant possessed a firearm that was manufactured out of state."); *United States v. Buenrostro*, 187 F. App'x 922, 924 (11th Cir. 2006) (holding that "the requisite interstate nexus of the firearm was satisfied" where "[a]n expert testified at trial that, based on their make and serial numbers, the guns found at [the defendant's] residence were manufactured in California and Florida, could not have been manufactured in Georgia, and had traveled in and affected interstate commerce."); *United States v. Scott*, 263 F.3d 1270 (11th Cir. 2001) (finding ATF agent's testimony that the firearm allegedly possessed by the defendant was manufactured

20

in California and had moved in interstate commerce to Georgia where the defendant was caught with the weapon was sufficient to demonstrate the required nexus to interstate commerce). Movant, therefore, has failed to demonstrate that counsel should have argued to the jury that there was no scientific proof that the firearm at issue moved through interstate commerce, or that he was prejudiced by counsel's failure to do so. Accordingly, Movant is not entitled to relief in connection with Ground 3(d).

B.    Movant's Remaining Claims Are Procedurally Defaulted.

Movant has procedurally defaulted his remaining claims that: (1) he is actually innocent of violating 18 U.S.C. § 922(g)(1) [Ground 1]; (2) the Government engaged in prosecutorial misconduct by (a) deliberately soliciting incriminating statements from Movant after he specifically did not waive his *Miranda* rights [Ground 2(a)]; (b) utilizing the media to discredit Movant and destroy his credibility [Ground 2(b)]; and (c) failing to turn over exculpatory evidence in the form of audio/video recordings of the interrogations [Ground 2(c)]; (3) the indictment was defective [Ground 4]; and (4) the Court erred in failing to suppress Movant's statements [Ground 5]. (Doc. 87).

1. <u>The Rules Regarding Procedural Default</u>

The procedural default doctrine reflects the "general rule" that "claims not raised on direct appeal may not be raised on collateral review[.]" *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Magluta v. United States*, __ F. App'x __, 2016 WL 4524462, at *5 (11th Cir. Aug. 30, 2016). To adequately preserve a claim, a movant must raise it both before the trial court (whether by motion, objection, or otherwise), and also on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (stating that in order to avoid a procedural default, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.") (internal quotation marks and citations omitted).

A movant may overcome the procedural default of his claim, however, if he shows both cause for the default as well as actual prejudice suffered as a result of the alleged error. *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2005). "[T]o show cause for a procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [his]

own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam). To demonstrate actual prejudice, a § 2255 movant must show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). Alternatively, a § 2255 movant also may overcome a procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1234-35. To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." *McKay*, 657 F.3d at 1196 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "The [actual innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggan v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1936 (2013) (citing *Schlup*, 513 U.S. at 316).

AO 72A
(Rev.8/82)

Movant did not raise Grounds 1, 2, 4, or 5 on direct appeal. Nor, as discussed previously herein and below, has Movant demonstrated cause or prejudice, or that he was actually innocent to excuse the procedural default of these claims.

2.    Movant's Actual Innocence Claim

In Ground 1, Movant claims that he is "actually innocent" of violating 18 U.S.C. § 922(g)(1), which the Court presumes is presented both as a substantive claim and as a basis for having his otherwise procedurally defaulted claims reviewed herein. Importantly, "actual innocence means factual innocence, not mere legal innocence." *Bousely v. United States*, 523 U.S. 614, 623 (1998); *McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011). Instead of relying upon new, reliable evidence that would demonstrate his factual innocence, Movant relies on his legal claim that there was insufficient evidence to convict him because, according to Movant, all of the evidence connecting him to the residence where the gun was found was "inferences on top of inferences." (Doc. 87 at 4). This legal argument, however, does not demonstrate that Movant was factually innocent of constructively possessing the gun in question.[4]

---

[4] Movant does not appear to contest the fact that he was a felon.

As set forth in the Eleventh Circuit's findings of facts in Section I.B., *supra*, the evidence at trial showed that: Movant unlawfully moved into the house in question, refused to leave when asked by the purchaser and the bank's agent to do so, told the police who went to the home to investigate that he owned the home and showed them a number of fraudulent documents he posted on the front door and windows of the home, because he continued to occupy the home through the closing date the purchaser and the bank went to state court to settle the ownership dispute and have him removed, the court ordered him to leave the home immediately, and Movant then was arrested on state charges related to his unlawful occupation of the home.[5]

During both interviews with the agents, Movant continued to insist that he owned the home, citing some of the documents he had posted on the window and door, told them that he slept in the master bedroom most of the time and pointed to the location of that bedroom on a schematic drawing the home, when the agents told him that they found a firearm in the house during their search (that they did

_____

[5] In addition to all of the other evidence demonstrating that Movant did, in fact, live in the home and despite Movant's present claim that he was not physically present there, the owner of the home testified that during the legal proceedings to remove him from the home Movant admitted to the court that he lived there. (Doc. 71 at 70).

not describe), Movant described a firearm that matched the revolver the agents found in the master bedroom, and told the agents that he had moved that revolver around the home and that the reason he had the firearm was to protect the home against burglary.

Movant now ironically claims that there is no way that he could have constructively possessed the firearm because he did not have a lawful/legal right to the property; nor did he have possession, ownership or control thereof. (Doc. 87, Attach. 1 at 4). Movant further argues that the Government "clouded and muddied the waters" so much with his sovereign citizen beliefs and attempts to obtain the property, which "confused the jury as to what they were to rely upon with the evidence presented." *Id.* What Movant ignores, however, is that the Government's case was based upon Movant's constructive possession – which, based on the jury instruction upheld by the Eleventh Circuit – means that Movant owned or exercised dominion and control over the residence where the contraband (*i.e.,* firearm) was knowingly concealed. Thus, all of Movant's actions related to utilizing his sovereign citizenship status essentially to illegally possess the home was relevant to his dominion and control over the house where the gun was found. And despite Movant's argument to the contrary, – *i.e.,* that the jury unlawfully

26

convicted Movant of possession of the gun solely on the basis of his occupancy of the home (because there were other occupants who lived there with him) – the Eleventh Circuit rejected this precise argument in connection with his challenge to the jury instruction on constructive possession since, *inter alia*, the basis for the jury's conclusion was not just his occupancy of the home but included his voluntary statements that the gun was, in fact, his. (*See* Doc. 84 at 12-13).

Movant, therefore, has not demonstrated that he was, in fact, actually innocent, he has failed to state a claim for relief in connection with Ground 1, and he cannot utilize this claim to excuse his procedural default.

3.    Prosecutorial Misconduct And Trial Error Claim Related to The Motion To Suppress

Movant claims in Ground 2 that the Government engaged in prosecutorial misconduct because it: a) solicited incriminating statements in violation of *Miranda*; b) utilized the media to discredit Movant in violation of his due process rights, and c) failed to turn over exculpatory evidence in the form of audio or video recordings of the interrogations. Movant argues in Ground 5 that the district court erred in failing to grant his motion to suppress. Movant has raised these issues for the first time herein, and, to the extent that he attempts to claim that he received

27

ineffective assistance of counsel as cause, as discussed in Section III.A., he has failed to do so, and he has not shown that he is actually innocent. Thus, Movant has failed to overcome the procedural default of these claims. Moreover, as discussed in Section III.A.3, *supra*, Movant's statements were voluntarily made and were not in violation of *Miranda*, which renders both Ground 2(a) and 5 meritless. Finally, the undisputed evidence at trial indicated that the agents did not record either of the interviews with Movant, which was consistent with their normal policy. (*See* Doc. 72, Attach. 2 at 99-100, 157, 159-60). Thus, Movant's claim in 2(c) also simply fails.[6]

### 4. Defective Indictment

Finally, Movant claims in Ground 4 that the indictment failed to charge constructive possession as an essential element of the offense, and thus failed to provide him with sufficient notice of the crime charged. Again, Movant did not raise this issue on appeal and he has not demonstrated cause or prejudice, or that he is actually innocent to excuse the procedural default. Regardless, his claim is without merit, as the indictment tracked the statutory language of § 922(g)(1) by

---

[6] Movant also has filed a motion for discovery in which he asks for the recordings of his interviews. Because there are no such recordings, Movant's motion for discovery [Doc. 89] is **DENIED**.

28

stating that Movant was a convicted felon who knowingly possessed a firearm that affected interstate commerce. (Doc. 1). *See United States v. Baxter*, 579 F. App'x 703, 706 (11th Cir. 2014) (holding that the indictment sufficiently charged the defendant with being a felon in possession by presenting the essential elements of the offense – *i.e.,* that the defendant was a convicted felon, that the defendant had knowledge that he was in possession of a firearm, and that the firearm affected or traveled in interstate commerce – and tracked the language of § 922(g)(1)); *Carlisle*, 173 F. App'x at 799 ("The indictment tracked the language of § 922(g) and clearly informed Carlisle of the specific offense with which he was charged. . . . To suggest otherwise stretches the limits of interpretation and imagination."); *Holt v. United States*, Nos. 2:05-CR-47; 2:07-CV-192, 2010 WL 465839, at *11 (E.D. Tenn. Feb. 3, 2010) ("The defendant cites no authority for his novel argument that the indictment in his case was somehow defective for failing to specifically allege 'constructive possession.' No such authority exists as far as this Court can tell and petitioner's argument is patently frivolous. The indictment charged all three elements of the offense and evidence of either actual or constructive possession was sufficient to sustain the defendant's conviction."). Thus, Ground 4 also fails.

IV.    Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Jermaine Gibson's motion to vacate sentence [Doc. 87] be **DENIED**.

**IT IS ORDERED** that Movant's motion for discovery [Doc. 89] is **DENIED**.

V.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

AO 72A
(Rev.8/82)

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determinations that: Movant's amended claims and first reply claim are untimely, his sentencing claim is not encompassed within the *Johnson* decision and thus also is untimely, his first ground for relief is procedurally defaulted, and the remainder of his claims are without merit. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

31

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 24th day of August, 2017.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)